**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**REVIVAL CHIROPRACTIC LLC**,

        Plaintiff,

v.                                        Case No:  6:19-cv-445-PGB-LRH

**ALLSTATE INSURANCE COMPANY
and ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,**

        Defendants.

_____/

## **ORDER**

This cause comes before the Court on Defendants' Motion for Summary Judgment (Doc. 28) and Plaintiff's Amended Motion for Summary Judgment (Doc. 29). Upon consideration, Plaintiff's motion is due to be granted, and Defendants' motion is due to be denied.

**I.**    **BACKGROUND**

This declaratory action arises from a dispute concerning the interpretation of Florida's Motor Vehicle No–Fault Law—specifically, Florida's personal injury protection ("**PIP**") statute. So, the Court starts there.

    **A.**    **Florida's PIP Statute**

Florida's PIP statute requires an automobile operator to carry PIP insurance that provides up to $10,000 in combined medical expense and lost wage coverage in the event of an auto accident. *See* Fla. Stat. 627.736(1)(a). In turn, the PIP statute mandates that every PIP insurer reimburse the insured for "[e]ighty percent of reasonable expenses

1

for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices and medically necessary ambulance, hospital, and nursing services if the individual receives initial services and care . . . within [fourteen] days after [a] motor vehicle accident." *See id.* (emphasis added).

The PIP statute provides two methodologies for an insurer to calculate reimbursements of medical expenses: (1) the reasonableness is a fact dependent inquiry methodology prescribed under § 627.736(5)(a); and (2) the schedule of maximum charges methodology provided under § 627.736(5)(a)1. *See Cent. Palm Beach Physicians & Urgent Care, Inc. v. Infinity Auto Ins. Co.*, No. 17-cv-62201-WPD, 2018 WL 3089326, at *2 (S.D. Fla. May 16, 2018).

Relevant here is the latter methodology, which permits an "insurer 'to limit reimbursement of medical expenses to 80 percent' of a schedule of charges that mostly track Medicare rates." *Bailey v. Rocky Mountain Holdings*, LLC, 889 F.3d 1259, 1262 (11th Cir. 2018). Specifically, the PIP statute provides that:

> 1. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges [("**Schedule**")]:
>
> a. For emergency transport and treatment by providers licensed under chapter 401, 200 percent of Medicare.
>
> b. For emergency services and care provided by a hospital licensed under chapter 395, 75 percent of the hospital's usual and customary charges.
>
> c. For emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community.
>
> d. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A

> prospective payment applicable to the specific hospital providing the inpatient services.
>
> e. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services.
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians Schedule of Medicare Part B, except as provided in sub-sub- subparagraphs (II) and (III).
>
> (II) Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories.
>
> (III) The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.
>
> . . .

Fla. Stat. § 627.736(5)(a)1.

"An insurer may limit payment . . . only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the [S]chedule." Fla. Stat. § 627.736(5)(a)5. Furthermore, "[i]f a provider submits a charge for an amount less than the amount allowed under [§ 627.736(5)(a)1], the insurer may pay the amount of the charge submitted." *Id.*

    **B.    The Subject Policy**

In 2017, Defendant Allstate Insurance Company and Defendant Allstate Property and Casualty Insurance Company (collectively, "**Allstate**") issued separate automobile insurance policies to Natalie Rivera ("**Rivera**") and Jazmine Padin ("**Padin**") (collectively, the "**Insureds**"). (*See* Docs. 26-1, 26-2). In the policies, Allstate provided notice that it

would limit reimbursement in accordance with the Schedule set forth in § 627.736(5)(a)1. (Doc. 26, ¶ 8).

While the policies were in effect, the Insureds "were each involved in motor vehicle accidents resulting in bodily injuries to their persons." (*Id.* ¶ 4). Following their respective accidents, the Insureds sought medical treatment from Plaintiff Revival Chiropractic LLC ("**Revival**") and assigned any rights and benefits under their policies to the same. (*Id.* ¶¶ 5–6). Revival then billed Allstate for the medical treatment it rendered to the Insureds. (*Id.* ¶ 14).

In some instances, the charges submitted by Revival were less than the amounts allowed under the Schedule (hereinafter, "**Subject Charges**"). (*Id.* ¶ 11). Revival submitted a charge of $100 for CPT Code 99202, which had an allowable amount of $149.92 under the Schedule. (*Id.* ¶¶ 12, 13). Revival also submitted a charge of $75 for CPT Code 98941, which had an allowable amount of $81.70 under the Schedule. (*Id.* ¶¶ 14, 15).

Having elected to limit reimbursements in accordance with the Schedule, Revival asserts Allstate was required to pay either: (1) 80 percent of the amount allowed under the Schedule as provided under in § 627.736(5)(a)1, or (2) the full amount of the Subject Charges as provided under § 627.736(5)(a)5. (Doc. 29, pp. 2–4, 7, 13). Allstate did neither. Instead, it paid only 80% of the Subject Charges. (Doc. 26, ¶ 16).

Accordingly, on January 23, 2019, Revival initiated a putative class action against Allstate in state court, seeking a judgment "[d]eclaring that [Allstate] violated Florida law by paying only [eighty percent] of the charges submitted where the charges submitted

were for less than the amounts allowed" under § 627.736(5)(a)1, Florida Statutes. (Doc. 1-1, p. 14).

On March 7, 2019, Allstate timely removed Revival's action to this Court. (Doc. 1). Now, Allstate and Revival both move for summary judgment. (Docs. 28, 29). With briefing complete (Docs. 31–33, 35), this matter is ripe for adjudication.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To support its position that it is entitled to summary judgment, the moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

A factual dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

In moving for summary judgment, Revival argues that when an insurer has given notice of its intent to use the legislatively created fee Schedule to calculate and limit reimbursements and a medical provider submits a charge for an amount less than the amount allowed under the Schedule (hereinafter, "**Lesser Charge**"), "then the insurer may pay the amount of the charge as submitted, or 80 percent of the allowable amount under the Schedule." (Doc. 29, p. 2).

For its part, Allstate argues that "this case centers around [its] policy which states that when medical providers submit a charge for amounts that are less than the maximum permitted by the fee [S]chedule . . . Allstate pays PIP benefits in the amount of 80% of amounts billed." (Doc. 28, p. 1). Allstate further argues Revival's position is flawed because:

> Revival contends that [§] 627.736(5)(a)(1)(5) <u>requires</u> payment of 100 [percent], instead of 80 [percent] of the fee schedule limitations if the bill is less than that limitation. But Section 627.736(5)(a)(1)(5) is not mandatory, rather it is permissive. It plainly states: "[i]f a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer may pay the amount of the charge submitted.

(*Id.* at p. 2) (emphasis in original).

Allstate miscomprehends the crux of this case and Revival's argument. This case does not center around Allstate's policy, or whether Allstate pays its claims in accordance with its policy. Rather, this case centers on whether Allstate pays its claims in accordance with the PIP statute. While the answer to that question will ultimately bear on the validity

6

of the language in Allstate's policy, the policy itself is not at the heart of this case. To be sure, the Complaint does not assert any claims for breach of contract. It only seeks declaratory judgment with respect to Allstate's obligations under the PIP statute.

Furthermore, despite Allstate's argument to the contrary, Revival does not contend that § 627.736(5)(a)(1)(5) is mandatory. In fact, Revival explicitly acknowledges that the provision is permissive. (*See* Doc. 29, p. 2 (citing § 627.736(5)(a)(5) and stating that "[if] the medical provider submits a Lesser Charge, then the insurer *may* pay the amount of the charge as submitted")) (emphasis added). Revival simply argues that, when the Schedule is elected through proper notice and a provider submits a Lesser Charge, the PIP statute only provides the insurer with two options for payment. The insurer may pay 80 percent of amount allowed under the Schedule, or it if is less, the full amount of the charge submitted. (Doc. 29, pp. 3, 4, 7, 13). For the reasons provided below, the Court agrees with Revival.

### A.   Principles of Statuary Construction

Under Florida law, the polestar of statutory construction is legislative intent. *See Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008). The determination of legislative intent begins, and often ends, with the plain text of the legislation. *See id.* "If the statutory language is unclear, [the Court must] apply rules of statutory construction and explore legislative history to determine legislative intent." *Bautista v. State*, 863 So. 2d 1180, 1185 (Fla. 2003). But, if "the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984).

When interpreting a statute, [a] single word or provision of a statute cannot be read in isolation. *Giamberini v. Dep't of Fin. Servs.*, 162 So. 3d 1133, 1136 (Fla. 4th DCA 2015) (citing *Jones v. ETS of New Orleans, Inc.*, 793 So.2d 912, 915 (Fla. 2001)). "A statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts." *Id.* (quoting *State ex rel. City of Casselberry v. Mager*, 356 So. 2d 267, 269 n. 5 (Fla. 1978)).

### B.  Applicable Statutory Provisions

As noted *supra*, the PIP statute provides two methodologies for calculating the reimbursement of reasonable medical expenses: (1) the fact dependent inquiry methodology; and (2) the schedule of maximum charges methodology. When, as here, an insurer elects to use the latter methodology to calculate reimbursements, the PIP statute provides, in pertinent part, that:

> 1. **The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges**:
>
> \*     \*     \*
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians Schedule of Medicare Part B, except as provided in sub-sub- subparagraphs (II) and (III).

Fla. Stat. § 627.736(5)(a)1.f.(1) (emphasis added).

The PIP statute further states that "[i]f a provider submits a charge for an amount less than the amount allowed under [§ 627.736(5)(a)(1)], the insurer may pay the amount of the charge submitted." Fla. Stat. § 627.736(5)(a)(5).

Upon review of PIP statute as a whole, the Court finds that these provisions are clear and unambiguous, and no statutory construction is required. Section 627.736(5)(a)(1) plainly authorizes an insurer "to limit reimbursement to 80 percent" of a "schedule of maximum charges." Fla. Stat. § 627.736(5)(a)(1). However, if a provider submits a bill for less than the amount allowed under § 627.736(5)(a)(1)—that is, a bill for less than 80 percent of amount allowed under the Schedule—then § 627.736(5)(a)(5) permits the insurer "to pay the lower billed amount in full." *See Geico Indem. Co. v. Accident & Injury Clinic, Inc.*, No. 5D19-1409, 2019 WL 6974264, at *3 (Fla. 5th DCA Dec. 20, 2019) (analyzing §§ 627.736(5)(a)(1) and 627.736(5)(a)(5)), *reh'g denied* Feb. 26, 2020.

For instance, if a provider submits a bill for $100 and the amount allowed under the Schedule for that service is $150, the insurer could reimburse the provider $120 (80 percent of the amount allowed under the Schedule) or $100 (the Lesser Charge). As Revival correctly notes, this option "creates a win-win-win scenario. The insured has a reduced co-pay, the insurer limits its reimbursement, and the provider is paid in accordance with the statute." (Doc. 29, p. 10).

Despite the plain language of §§ 627.736(5)(a)(1) and 627.736(5)(a)(5), Allstate claims that, if an insurer elects to use the Schedule to limit reimbursement, and a provider submits a Lesser Charge, the insurer is permitted to pay only 80 percent of the Lesser Charge. This manner of payment, Allstate argues, is consistent with the PIP statute, "which mandates that a PIP insurer must pay 'eighty percent of all reasonable expenses.'" (Doc. 28, pp. 2, 10 (quoting Fla. Stat. § 627.736(5)(a)(1))). The Court is unpersuaded.

9

"A statute should be construed so that effect is given to all its provisions, so that no part of it will be inoperative or superfluous, void or insignificant." *Calzadilla v. Banco Latino Internacional*, 413 F.3d 1285, 1287 (11th Cir. 2005) (citations and internal quotations omitted). If accepted, Allstate's argument would render § 627.736(5)(a)(5) unnecessary and meaningless because common sense dictates that no insurer would ever pay the full amount of a Lesser Charge as provided under § 627.736(5)(a)(5), if it could, as Allstate argues, pay only 80 percent of the Lesser Charge.

Furthermore, "[t]here is nothing in the statutory language that allows an insurer to limit [a Lesser Charge] payment to 80 [percent]." *Geico Indem. Co. v. Accident & Injury Clinic, Inc. a/a/o Frank Irizarry*, Case No. 2018-10031-APCC (Fla. 7th Jud. Cir. Cty. Ct. 2019),[1] *quashed on other grounds*, No. 5D19-1409, 2019 WL 6974264, at *3 (Fla. 5th DCA Dec. 20, 2019).[2] If the 80 percent limitation applied to Lesser Charges, the Florida legislature would have explicitly stated that. But it didn't. Instead, the PIP statute explicitly states that, "[i]f a provider submits a charge for an amount less than the amount allowed under [§ 627.736(5)(a)(1)], the insurer may *pay the amount of the charge submitted*." See

---

[1] (*See* Doc. 29-3).

[2] In *Geico*, the Fifth District Court of Appeals for the Florida Circuit Court of Appeals quashed the lower court's decision and remanded the case for further proceedings because the lower court interpreted the phrase "the amount allowed under [§ 627.736(5)(a)(1)]" as referring only to the amount allowed under the Schedule. *See Geico Indem. Co.,* 2019 WL 6974264, at *3. However, "the amount of allowed under [§ 627.736(5)(a)(1)] necessarily encompasses 80 [percent] of the amount allowed under the applicable fee [S]chedule." *See id.*

Fla. Stat. § 627.736(5)(a)5 (emphasis added).[3] The Court therefore rejects Allstate's argument.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Amended Motion for Summary Judgment (Doc. 29) is **GRANTED**.

2. Defendants' Motion for Summary Judgment (Doc. 28) is **DENIED**.

3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Revival Chiropractic LLC and against Defendants Allstate Insurance Company and Allstate Property and Casualty Insurance Company.

**DONE AND ORDERED** in Orlando, Florida on March 5, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[3] In applying §§ 627.736(5)(a)(1) and 627.736(5)(a)(5) to the Subject Charges, the Court notes that for the $100 charge based on CPT Code 99202, Allstate had the option of paying $119.94 (80 percent of the allowable amount of $149.92) or $100 (the amount of the charge submitted). As to the $75 charge based on CPT Code 98941, Allstate had the option of paying $65.36 (80 percent of the allowable amount of $81.70). Section 627.736(5)(a)(5) does not come into play on the latter charge because the charge submitted is not less than 80 percent of the allowable amount.